Please wear on earphones!! If you can't move your device and watch it, Please watch while dragging the screen! If you can't move your device and watch it, Please watch while dragging the screen! If the grounds are known and before the appellant's brief is filed, if the grounds somehow become known after the appellant's brief is filed, any arguments for remand should appear in the director's brief, not in the form of a motion, but as part of the arguments along with the other arguments on the merits. This makes the stakes even. In this case, the director hasn't even the stakes. Even at this stage, in his red-covered motion, he hasn't invested any time at all. We're going to need to talk about that procedure a lot, I'm sure. But can we talk about the technology for just a minute? Sure. One of the big points which you colorfully address when you talk about the miniature person and the miniature car, having the miniature visor because there's a tiny little tissue packet. It wouldn't fit within the prior art. You know what that is? No idea. Vanishing facial powder tissues. I have received this and it looks like it might fit in that clip. It's a tissue packet. I don't know whether it would fit in that clip or not. It's a word miniature, of course, but not my word. As soon as you find the door. I understand that. And I don't, even looking at that thing from here. It's a pretty tiny packet. It doesn't look like the ordinary and customary meaning for a tissue packet. It calls itself a tissue. These are facial powder tissues. Nothing in the claim language limits the size of a tissue packet. Why wouldn't one of skill in the art be aware of this size of tissue packet as well as a larger facial tissue? I don't know, but the director has already admitted that the Smith device is too small probably to hold that too. But that's not in the record. Well, I guess the ultimate thing that I'm raising by going outside of the record, and I acknowledge that you could object to that to some degree. Why do, in this particular case where there's such an apparent obviousness, if not anticipation, why would this court be a stickler on procedure? Well, I don't think obviousness has come up. Of course it hasn't come up. That's the whole point, is that the director wants it back so he can bring up obviousness and he'll probably find this packet himself next time. But it's not in the record. There's nothing in there about a collection of packets. There's nothing that shows that a piece of wire follows the packet as it's being used. Again, I'm asking you to help me out here. Why am I not able to read this packet and say it's at least 103 obvious? Well, the reason we're here is because... Because that's not before me, you want to say. Well, we need to construe the claims and the board hasn't construed them correctly. And the director's admission that the Smith device is too small doesn't handle that. It doesn't get to the thing. It's only too small if the claims are construed correctly. You have to construe the claims first. Then you apply the prior art. And that's why I'm here. We have to have a clear construction of the claims. So, maybe you don't want to talk about Bill 27-F. But I think it's ironic that the director enjoys a somewhat deferential standard of review about the board himself. But he won't prefer the board's exercise of discretion in not looking for another rejection when it had a chance. The board certainly shouldn't be faulted for not knowing about his theory, his unsupported theory, which is almost political, that if a dependent claim is said to be obvious, then the dependent claim is supposed to be obvious, too. Who ever heard of that? They can't be faulted for not recognizing that. And on top of that, of not granting the slightest degree of deference to the board's discretionary and well-justified inaction, the director's refusal to defend the actual decision amounts to an attempt to unilaterally overturn it, which the Allapatt case says he can't do. He had the back of the board to overturn the decision. This is a dense cliff for an automobile vicer. You're going to argue with full passion that this deserves 20 years of exclusive rights? On the record, it certainly does. The director can't overturn the decision by himself. At this stage in the process, it's the court's turn to make a decision. So, whatever it says, there's nothing for the court to decide because he decided that Smith was too small. Well, given the solicitor's admissions in the record, it seems to us that we're faced with two choices, remand or reverse. And I guess I'm just confused why we don't just remand this case. I found two cases on point, which I think were cited by both of you, Gould and Hester. And in one case, Gould, they remanded. In the other, in Hester, they reversed. And this case seemed more like Gould to me because in Hester, what the appellants pointed out was that the PTO had not acknowledged or conceded that what they had done below the rejection was actually improper. And that seems to be a critical distinction, in my mind, between Gould and Hester, where they reached the two opposite decisions, remand or reverse. Because both cases, factually, were otherwise very similar to this from a procedural standpoint. Am I missing something about Gould and Hester? No, I don't think Gould 27F was in place at the time. And besides, Hester came after Gould. Hester is a good case. I mean, it basically almost overrules Gould because of the situation you have there. Well, can one channel do that? No. But the distinction I saw between Gould and Hester is the one I'm pointing out to you, that in the one case, the board or the PTO had not conceded that the rejection was wrong. And in the other, they pretty much had. And here, they pretty much have also. Well, it looks like at Gould, there was only one claim. And so whatever the commissioner came up with, and we don't know. I couldn't tell from the opinion. It must have been a dead ringer. We don't have a record like that here. We've got 16 claims for them to deal with. And the solicitor hasn't said anything about the claims. It's too small. But the construction is supposed to take place first. So his concession really doesn't concede anything. And I hear what you're saying, too. The patent office appeal is different from a lot of other appeals because it has to go back to the patent office anyway. And I think it was Gould who said that in some case, or pointed that out. Do you ever get to appeal anything? Do I have any jurisdiction over ex parte appeals? Everything's going to be remanded. So there's a lot of references back and forth. Doesn't there have to be some flexibility in the procedure when... Pardon me? Doesn't there need to be some flexibility in the procedure when this sort of instance occurs? Of course. The director discovers something later or the director sees something that needs additional attention after it has already left his office. We're heading toward a situation where he's invented a new way to get a remand. Just ignore the brief. You don't answer the other guy's brief at all. Just default. Ignore 27-F. Well, obviously a brief is very compelling because he says, you know, you're right. Do you want to preserve the remainder of your time? I think so. I just want to point out first that this is the same motion that the director brought before. He didn't want it to be called a brief before. Thank you very much, Mr. Crayer. Mr. Whalen. Thank you, Your Honor. May it please the Court, before I address the merits of the discussion, I'd like to acknowledge two non-substantive factual errors in the brief. They're both pointed out in page 3 of the reply brief. One deals with the block voting of the claim, which omitted a few words from the actual claim. It's at 8-1. I apologize for that, as well as the characterization of the brief. As to the issue here, we believe that we don't support the board's decision. There is non-substantial evidence in the reply brief. Why couldn't you just send this back to the board and tell them to change it? Well, Your Honor, we don't have jurisdiction. And so there's got to be some procedure. Why can't you go to the director and say to the director, tell the board to do this over? Your Honor, that's what will happen when we retain jurisdiction in the case. When a case moves from the agency to the court, we don't have, just like from the district court to the federal circuit, you can't... I understand. In other words, you're saying this all didn't occur until after the brief was filed? Yes. And, in fact, we'll be moved to rename the case a few weeks after the brief was filed. As Judge Moore pointed out, we agree with his rubric. He pointed out that there wasn't substantial evidence, and Smith anticipated the claim. And he's right. And it would be irresponsible and unethical to argue to the court. In the alternative, it's substantial evidence, or it's a rejection that I don't believe it does, and the board doesn't believe it does. Clearly, an obvious rejection shouldn't have been made here. We asked for the case back as early on as we realized. And the board will expeditiously enter a new round of rejection if they will not hand the case back to the examiner. If there are a lot of claims, they will recognize that as well, and the case will be presented to the court. That's the situation we try to avoid. Counsel, the case has gotten this far, though. Certainly, if you had filed your motion for a remand before a blue brief had even been filed, there would have been some judicial economy arguments that could be made about saving everybody the time and hassle of an appeal. But here we are, an oral argument, fully briefed. Why not reverse as opposed to remand? Well, I think there's a few reasons. First of all, I don't think the truth – I don't think it's just judicial economy. I think – I don't think there necessarily should be a different standard or a totally different standard just because a blue brief is filed. There will be cases where we don't recognize the error until a blue brief is filed. And, for example, the board – when you appeal to the board, you're thinking about this lady, you're criticizing the examiner. When you appeal to this court, you're criticizing the board, and they're not exactly the same thing. So there will be times when somebody actually does criticize the board opinion in a blue brief that we haven't thought about where they're right. And so to encourage remand as fast as we can, which we did here, and it's moved along. At this point, though, reversal would require analysis of the rejection. If you look at Hester, the court went on to analyze the decision later on, and you would have to go through the analysis of the errors in the abstract because we're not going to defend them. In Hester – Do we have to? We have to admission by the PTO that the board's decision is not supported by substantial evidence. So I'm not sure we have to actually reverse. And as a technical matter, it might make no difference whether it's a reverse remand and vacate. I mean, that's what's going to happen. If you were to remand the case, we'd vacate for a decision instantaneously. We just don't have jurisdiction to do that. I mean, it would be pulling the rug out in front of them. If we could do it, and if the court says we could do it in an opinion, we will then have that option, and we would use it in the future. Gould ruled that it was filed, and then remanded the case back, as you asked in the question. And in Hester, where they didn't do it, it was because, as you pointed out, there was no concession. We can see here. And the case coming back, I think if you start interpreting the claims in the abstract without a rejection, I don't think that's the wisest course. There's no rejection. The rejection that will come up on obviousness will present a whole different set of issues, and it may move a lot of new issues. And we think it's the wisest course. I don't think 27F avoids remanding the record. It specifically provides for it. It doesn't say file a separate motion. But we are doing exactly that. We are not presenting the merits of the board decision. And I can't find a case where, with all the other cases, the alternative arguments were made. We can't do that here. And I think, as time has passed since those decisions, there's been other decisions, whether it be Demas Act, where the court has cautioned the solicitor to not make new arguments on the end. We've understood that. And rather than try to fudge the rejection or try to make good arguments about the rejection, for example, about size not making a difference, we heed that admonition, and we, when we realize we've made a mistake, would like to pull the case back, would like to do a better job. And here, clearly, they should have gone on and done obviousness, and they didn't. And they will do so in a timely manner. We started, we called this the opponent's attention in June. And we regret not doing it earlier, but it's now December, and we try to avoid a lot of this. And although my opposing counsel is a bit polite, he's been opposing this ever since. So we ask that the case be brought back, and for us to make an application. The court has no further questions. Thank you, Mr. Wynn. Mr. Craver, you have five minutes to respond. Thank you. I just want to remind the court that the examiner did not find a reference that would handle a collapsible bag of tissues. The ROM patent doesn't do it. It has a stiff box. And every collaborator is talking about ROM a lot. He can't make another rejection when he wants you to look at ROM and say, well, it must be obvious. But there's nothing in the record that supports that. The examiner would have to go back and find another reference. So there's no good grounds for a remand when there's nothing wrong with the record. The fact that she couldn't find something in the patent office doesn't mean that the record is a limit. I'd also like to point to page A30 of the Joint Appendix, which is where we were responding to the examiner's rejection when she first cited Smith. And what we did was we rewrote the preamble to make it a Texas-style preamble. The point I want to make here is that we argued about Claim 8. We argued about Claim 16. And the solicitor is going through all the stuff about Representative Claim 1. There's nothing to that. All the claims are in the case. We followed that through in the brief. Well, there's another subject I'd like to talk about, and that's the Otto and Casey rule. As you know, Henry Otto and Henry Casey, there's a rule that says if the two devices are identical, that is, the reference device and the applicant's device are the same, then an argument about a different purpose or use isn't going to help patentability for the device. Well, the court just pronounced the Smith device and the Hayes device to be the same, and then they distorted the rule of Otto and Casey to say that the reference device was presumptively capable of doing what our device does. They need to be straightened out. We cited all kinds of precedents, if said otherwise, and they ignored them. They brought up the issue of inherency, and they ignored that. Claim construction is an important part of this case. But you've straightened him out. You have straightened him out. The solicitor just said we made a mistake. Let us correct him. Well, is he going to correct the claim construction? No, all he said so far is the Smith is too small. It's only too small when the claim took place correctly. That's the only thing he said is the Smith device is too small. Thank you. Thank you, Mr. Craig. All rise.